# CHARLESTON.

## WILSON *v.* PHŒNIX POWDER MANF'G CO.

Submitted January 15, 1895—Decided April 3, 1895.

1. **NUISANCE—NEGLIGENCE.**
   A mill manufacturing powder and other explosives, and storing the same on the premises, situate on the bank of the Ohio river and near two railroads and a public road, is a public nuisance, and any one injured in property by explosion of powder stored there may recover damages without proof of negligence in its operation.

2. **EVIDENCE—UNNECESSARY ALLEGATIONS—SURPLUSAGE**
   Allegations of facts not necessary to maintain an action or defense are immaterial and surplusage, and need not be proven.

3. **EVIDENCE—AUTHENTICATION OF PAPERS.**
   Where a judge is *ex officio* clerk of a court, then both certificates specified in section 19, chapter 130, Code, are not required, his certificates as judge being sufficient.

4. EVIDENCE—JUDICIAL NOTICE—LAW OF FOREIGN STATE.

Under section 4, chapter 13, Code, courts take judicial notice, without proof, of the law of another state, and in so doing may consult any book purporting to contain, state, or explain the same, and consider any testimony, information or argument offered on the subject.

5. EVIDENCE—FOREIGN DEED—CERTIFICATION.

Original deeds made outside of this state, and so certified as to warrant recordation in this state, are admissible in evidence here.

6. POSSESSION—EVIDENCE.

Actual possession being an element of complete legal title to real estate is *prima facie* evidence of such title in the possessor. One in such position may maintain trespass or trespass on the case for damage thereto, without further proof of his title.

7. POSSESSION—TRESPASS.

Either actual or constructive possession will maintain trespass for damage to realty.

8. EVIDENCE—ESTOPPEL—ANSWER.

An answer in chancery in another suit is admissible as evidence of an admission therein in behalf of one though not a party to the suit in which it was filed, though it would not be admissible as an estoppel under the prinicple of *res judicata.*

SIMMS & ENSLOW for plaintiff in error, cited Code, c. 130, ss. 20, 21; 1 Johns. 78; 18 B. Mon. 800; 15 Wall. 537; 33 N. W. Rep. 224; 25 N. E. Rep. 259; 21 N. E. Rep. 864; 15 W. Va. 676.

MARCUM, PEYTON & MARCUM for defendant in error, cited 74 Pa. St. 230; Wood's Law of Nuisance (2d Ed.) § 69; 80 N. Y. 579; 36 Am. Rep. 654; 6 Hill 292; 19 Am. St. Rep. 34, 39, note; 36 Am. Rep. 508; 26 W. Va. 110; Id. 236; 3 Am. Dec. 296; Ohio Rev. Stat. (1890) § 533; Ohio Const. Art. IV, § 16; U. S. Rev. Stat. §§ 905, 906.

BRANNON, JUDGE:

The Phoenix Powder Manufacturing Company was sued in an action of trespass on the case in the Circuit Court of Wayne county by John G. Wilson, to recover damages to Wilson's dwelling house and other buildings resulting from an explosion of powder stored in buildings of the defendant company. The jury found a verdict for the plaintiff, subject to the defendant's demurrer to the plaintiff's evidence, on

which demurrer the court gave judgment for the plaintiff, and the defendant resorted to the writ of error which we now decide.

There was no evidence to show negligence on the part of the defendant in the operation of its powder mill or in the storage or handling of its powder, and thus the question arises whether the plaintiff can recover by showing only the presence of the mill in the location it occupied, the storage of powder there, its explosion, and the consequent damage to the plaintiff's property, without proof of negligence.

Was the defendant maintaining a public nuisance? If it was, it was engaged in the commission of a public wrong; and, injury resulting therefrom to the plaintiff, the defendant must repair such injury.

Powder and nitroglycerine are commodities of essential, if not primary, importance from their wide use in war and in the construction of railroads, roads, buildings and other varied uses, and their manufacture is a business entirely respectable and indispensable; but that consideration is not all controlling; that consideration is not alone to be regarded. The rights and safety of those not engaged in their manufacture must not be forgotten. They are agents of magical power and wrath. When the spark or touch of ignition meets them, their subtle force is awakened to instantaneous action—an action giving no warning, and so potent that almost in the twinkling of an eye, before thought of self preservation can come, it wastes man and his home and his savings with irrepressible energy. Often the explosion comes from causes not discernible, which reasonable foresight or prudence can not see. Valuable as are these giants as auxiliaries to man in his great works, they must be limited to places and bounds of safety.

Here is a mill, making powder and other explosives, standing right on the bank of the Ohio river, upon which, day and night, boats bear thousands of precious lives and thousands of dollars of property, about two hundred yards from the great Chesapeake & Ohio Railroad and about three hundred yards from the Huntington & Big Sandy Railroad, both great highways of the public, with trains filled with passengers

and property passing over them almost hourly, and about seventy five yards from a country road, also a highway in constant use. Six explosions occurred at this mill within three years, showing that it was a constant menace to life and property for a wide range around it, within which many people lived and worked, as its explosions threw large pieces of iron and large timbers out into the river, and some clear across into the town of Burlington, about one half mile away on the Ohio bank of the river, and into fields in Ohio, a mile distant. The buildings of the plaintiff which were injured in the explosion involved in this suit stood in Burlington. These explosions have injured many houses in Ohio, by shaking and jarring, damaging chimneys, walls, plaster-ing, etc., from the force of concussion. Some of the explosions were terrible in their power and shock. This powder mill, with its great quantity of explosives in its storehouse, was a constant danger impending over those highways and all lawfully using them, and the people living in the neighborhood within the danger limit—an ever present peril, day and night.

The manufacture and keeping of quantities of gunpowder, nitroglycerine and other explosives in or dangerously near to public places, such as towns or highways, is a public nuisance and indictable as such. It makes no difference whether carefully or negligently conducted and managed. Negligence is here no material element. If damage happen to a person from explosion, the injured party is entitled to compensation without proving negligence on the part of the defendant. He is injured by that which breaks the law—the law against public nuisance. He is in no fault, while the other man is, and he has received damage from that other man's wrongful act. He has a right to immunity from this injury, and the other man owed him the duty of securing him immunity. The state is wronged by the maintenance of a nui-sance which may at any moment take the lives and destroy the property of its people passing and repassing over its highways, and reposing and working in their accustomed places, and the particular person hurt has special cause of complaint, because he is especially injured. *Talbott* v. *King*, 32 W. Va. 6 (9 S. E. Rep. 48).

It is true the manufacturer owns his mill, and is engaged in lawful and honorable business; but he has violated that maxim, centuries old in the law, yet vital and indispensable in organized society, where everyone must use his property to earn bread, *"Sic utere tuo ut alienum non laedas"* (So use your own property that you injure not another). This lawful but dangerous business, being carried on where it is, is a public nuisance. No care can exempt it, situated where it is, from the charge of being a nuisance. Wood, Nuis. § 69; *Wier's Appeal,* 74 Pa. St. 230; *Heeg* v. *Licht,* 80 N. Y. 579; *Myers* v. *Malcolm,* 6 Hill 292; *Powder Co.* v. *Tearney,* 131 Ill. 322 (23 N. E. Rep. 389); 19 Am. St. R. 34 and note p. 39; *Mc-Andrews* v. *Collerd,* 42 N. J. Law 189.

In *McAndrews* v. *Collerd, supra,* the opinion says that "keeping powder, nitroglycerine, or other explosive substances, in large quantities, in the vicinity of a dwelling house or other place of business, is a nuisance *per se,* and may be abated by action at law or injunction in equity, and, if actual injury results, the person keeping them is liable therefor, even though the act occasioning the explosion is due to other persons, and is not chargeable to his personal negligence." The reason is the act is wrongful, fraught with danger all the time, and it is illogical to call on one who, free from fault, has been injured to prove that the party who injured him conducted a business confessedly unlawful in a careless manner, and just wherein he was careless. His whole action is negligent from being wrongful, so to speak. The authorities above cited dispense with proof of negligence by the plaintiff. Later New York cases overrule the case of *People* v. *Sands,* 1 Johns. 78, in this regard.

Now, if this mill were located in a secluded place—one removed from highways—being in itself a lawful business, the case would be different; it would not be a public nuisance, and to recover injury from an explosion I apprehend the plaintiff must show negligence on the defendant's part. But it is contended that as the declaration alleges negligence on the part of the defendant, it must be proven. That allegation was unnecessary, immaterial and surplusage, and the law does not require anything but material allegations to be

proven. *State* v. *Howes*, 26 W. Va. 110; *State* v. *Hall*, 26 W. Va. 236; 1 Greenl. Ev. § 51.

Another matter in the case relied upon as error is the introduction in evidence of a copy of a will to show title in the plaintiff to the premises injured. It was probated in Ohio, and it is said that it is insufficiently authenticated in the fact that, though certified as a full, true copy by the probate judge it wants the clerk's certificate, both being required by section 19, chapter 130, Code. By the constitution of Ohio and its statute law, the probate judge is also clerk of the probate court, and keeper of its books and papers. This same person could make two certificates, but that would seem useless. The object of the statute in requiring two certificates is to double the probability of truthful certification; but this can not be done where one man fills both places, the statute requiring the judge of the same court to certify that the clerk's certificate is in due form. It has been held that, where one person is clerk and judge both, it is sufficient. *Cox* v. *Jones*, 52 Ga. 438. We have the right under section 4, chapter 13, Code, to take judicial notice of the law of another state, this being a change from the former law (1 Rob. Prac. 249; 1 Greenl. Ev. § 5, note 1; *Id.* § 489) and, in exercising this power, can consult the statutes of Ohio, or any other book, to learn that the probate judge is by law *ex officio* clerk of the probate court. *Goodrich's Case*, 14 W. Va. 840; *Manufacturing Co.* v. *Bennett*, 28 W. Va. 16.

It is claimed that certain deeds were improperly admitted. They were offered to show title in the plaintiff. They purport to be original deeds, not authenticated copies, and, being acknowledged in such manner as would allow them to be recorded here, that is sufficient under section 21, chapter 130, Code, 1891. But, even were the said will and deeds not admissible, it would be immaterial, as the plaintiff, so far as concerns his title to the premises, could maintain his action, as he was in actual possession, which is one and the first element of title, as it is *prima facie* evidence of full legal title in him who has it. 1 Lomax, Dig. 574; 2 Minor's Inst. 447; 2 Bl. Comm. 596 and note. One in actual possession may maintain trespass *quare clausum fregit*. Formerly, to maintain

that action, actual possession was necessary. Bart. Law Prac. 182; *Kretzer* v. *Wysong,* 6 Rand. (Va.) 8; and *Truss* v. *Old, Id.* 556. Therefore, a tenant being in possession, the landlord could not sue in trespass for lasting injury to the freehold, but must bring trespass on the case. 1 Tucker 191. But now a constructive possession is sufficient to maintain trespass. *Snider* v. *Myers,* 3 W. Va. 195; *Storrs* v. *Feick,* 24 W. Va. 606.

I suppose the injury to the plaintiff's property was so direct and immediate from the explosion as to warrant an action of trespass under the strict principles of the common-law; but that is irrelevant, as, the action here being trespass on the case, we need not consider the nice and finespun distinction as to direct and consequential injury, on which rested the choice between the two forms of action, resulting formerly in so many nonsuits, discussed in *Jordan* v. *Wyatt,* 4 Gratt. 151 and elsewhere, as the enactment found in section 8, chapter 103, Code, that "in any case in which an action of trespass will lie there may be maintained an action of trespass on the case," does away with it in this case.

Another error alleged in the petition for the writ of error is that the court allowed to go in evidence the answer of the Phoenix Powder Manufacturing Company filed in a suit of the Huntington & Kenova Land Development Company. The object of tendering this answer as evidence was, I suppose, to have the benefit of the statement in it as an admission that the defendant did buy land, and upon it erect and operate a powder manufactory. Was it admissible? It was a pleading in a case to which Wilson was a stranger. A judicial record is not admissible against or binding upon parties to it, in favor of strangers to it, its effect being confined to parties and their privies, that is, when offered to have the effect of estoppel, under the principle of *res judicata;* but that was not the purpose of the introduction here, it being offered only as an item of evidence is an admission by the defendant, open to explanation or rebuttal. There is a volume of law to show that pleadings in another cause may be used for evidentiary or collateral purposes where only one party to the case on trial was a

party to the former one. An answer in chancery may be used as evidence of an admission of a fact or facts. *Hunter* v. *Jones*, 6 Rand. (Va.) 541; *Tabb* v. *Cabell*, 17 Gratt. 160; 1 Greenl. Ev. § 572*a*; 1 Whart. Ev. §§ 836, 838. Moreover, without the admission contained in the answer, there was plenty of evidence to show that the defendants built and operated the mill, and stored powder there, especially on a demurrer to evidence. There was ample evidence to sustain the verdict, especially considered upon a demurrer to the evidence.

We can not set aside the verdict for excessiveness of damages. Therefore we affirm the judgment.